# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 14, 2014

Lyle W. Cayce
Clerk

No. 12-60668

DOLGENCORP, INC.; DOLLAR GENERAL CORP,

Plaintiffs - Appellants

v.

THE MISSISSIPPI BAND OF CHOCTAW INDIANS; THE TRIBAL COURT
OF THE MISSISSIPPI BAND OF CHOCTAW INDIANS; CHRISTOPHER A.
COLLINS, In His Official Capacity; JOHN DOE, A Minor, By and Through
His Parents and Next Friends John Doe Sr. and Jane Doe,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

ON PETITION FOR REHEARING EN BANC

(Opinion October 3, 2013, 732 F.3d 409)

Before SMITH, HAYNES, and GRAVES, Circuit Judges.
PER CURIAM:

Treating the petition for rehearing en banc as a petition for panel
rehearing, the petition for panel rehearing is DENIED. The court having been
polled at the request of one of its members, and a majority of the judges who
are in regular active service and not disqualified not having voted in favor

(FED. R. APP. P. 35 and 5TH CIR. R. 35), the petition for rehearing en banc is DENIED.

In the en banc poll, 5 judges voted in favor of rehearing (Judges Jones, Smith, Clement, Owen, and Southwick), and 9 judges voted against rehearing (Chief Judge Stewart and Judges Jolly, Davis, Dennis, Prado, Elrod, Haynes, Graves, and Higginson).


ENTERED FOR THE COURT:


 /s/  James E. Graves, Jr.
JAMES E. GRAVES, JR.
United States Circuit Judge


JERRY E. SMITH, Circuit Judge, joined by JONES, CLEMENT, OWEN, and SOUTHWICK, Circuit Judges, dissenting from the denial of rehearing en banc:


The opinion for the panel majority, although well crafted, takes Indian law well beyond anything supported by applicable precedent.  I respectfully dissent from the denial of rehearing en banc.

I have explained why the majority opinion is error.  *See Dolgencorp, Inc. v. Miss. Band of Choctaw Indians*, 732 F.3d 409, 419−24 (5th Cir. 2013) (Smith, J., dissenting).  But error—indeed even grave error, as here—is ordinarily not enough to warrant en banc review.  Such rehearing is justified if "the proceeding involves a question of exceptional importance."  FED. R. APP. P. 35(a)(2).  That test is easily met here, because "[t]his ruling profoundly upsets the delicate balance that the Supreme Court has struck between Indian tribal governance . . . and American sovereignty."  *Dolgencorp*, 732 F.3d at 419.

Until now, no circuit court of appeals had upheld Indian-court jurisdiction, under the so-called "first exception" announced in *Montana v. United States*, 450 U.S. 544, 564 (1981), over a tort claim against a non-Indian defendant. The holding is ambitious, to say the least, coming from a circuit that decides little Indian law. If this court is to work such a change in established precedent, it should be the careful work of the full court and not just a two-judge majority.

The panel majority emphasizes the reprehensible nature of the alleged act by opining that "[i]t is surely within the tribe's regulatory authority to insist that a child working for a local business not be sexually assaulted by the employees." *Dolgencorp*, 732 F.3d at 415. Even this horrendous deed, however, does not implicate "tribal self-government" or the tribe's ability "to control internal relations." *Montana*, 450 U.S. at 564. Moreover, no remedy is lost, because it is undisputed that the state courts of Mississippi are fully empowered to vindicate the plaintiff's rights; this is mainly a turf battle over whether Indian sovereignty trumps the right of a non-Indian to have its case tried in an American forum.

As I showed in dissent, all of the Supreme Court's post-*Montana* decisions have tended to limit Indian-court jurisdiction in cases such as this. Nowhere has the Court endorsed no-holds-barred Indian jurisdiction requiring non-Indians to defend, on the basis of implicit consent by their presence and activity on a reservation, tort actions of whatever nature. The Supreme Court's recent pronouncement is plain: Regulation of the affairs of non-Indians "must stem from the tribe's inherent sovereign authority to set conditions on entry, preserve tribal self-government, or control internal relations." *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 337 (2008) (citing *Montana*, 450 U.S. at 564).

An act committed by a non-Indian on an Indian—even where the alleged

facts are as distasteful as these—should not be a vehicle for disrupting the carefully-drawn line separating tribal and U.S. sovereignty. I respectfully dissent.